**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TIMOTHY J. CASTILE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-210** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Maureen P. Kelly** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiff Timothy J. Castile ("Castile") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying his applications for disability insurance benefits ("DIB")

and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security

Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  For the reasons that follow, the decision of the

Commissioner will be vacated, and the case will be remanded to him for further administrative

proceedings.

### II.    PROCEDURAL HISTORY

Castile protectively applied for DIB and SSI benefits on March 15, 2006, alleging

disability as of June 9, 2005.  (R. at 167, 170, 199).  The applications were administratively

denied on August 31, 2006.  (R. at 120, 126, 131, 137).  Castile responded on September 21,

2006, by filing a timely request for an administrative hearing.  (R. at 142).  On May 27, 2008, a

hearing was held before Administrative Law Judge Michael J. Cummings (the "ALJ").  (R. at

80). The ALJ presided over the hearing from Norfolk, Virginia, by means of an electronic video-conferencing apparatus. (R. at 82). Castile, who was represented by counsel, appeared in Erie, Pennsylvania, and testified at the hearing. (R. at 83-96). In a decision dated June 23, 2008, the ALJ determined that Castile was not "disabled" within the meaning of the Act. (R. at 99-110).

Castile filed a request for review with the Appeals Council on June 27, 2008, asking that the ALJ's decision be reconsidered. (R. at 147). In an order dated October 29, 2008, the Appeals Council granted the request for review, vacated the ALJ's decision, and remanded the case to the ALJ for further consideration. (R. at 111-114). A second hearing was held before the ALJ on October 30, 2009. (R. at 52). The ALJ again presided over the hearing from Norfolk. (R. at 54). Castile appeared in Erie with his counsel and provided additional testimony. (R. at 56-68). Testimony was also provided by Brandy Hornbeck ("Hornbeck"), Castile's fiancé, and Robin Stromberg ("Stromberg"), an impartial vocational expert. (R. at 68-79). The ALJ determined that Castile was not statutorily "disabled" in a new decision dated December 7, 2009. (R. at 6-21).

Castile filed another request for review with the Appeals Council on December 22, 2009. (R. at 4). On May 26, 2010, he supplemented the administrative record by presenting the Appeals Council with the results of a psychological evaluation conducted on April 7, 2010. (R. at 375-383). The Appeals Council denied the request for review on July 28, 2010, thereby making the ALJ's second decision the final decision of the Commissioner in this case. (R. at 115). Castile commenced this action on August 26, 2010, seeking judicial review of the Commissioner's decision. (ECF No. 1). Castile and the Commissioner filed motions for summary judgment on December 30, 2010, and February 14, 2011, respectively. (ECF Nos. 9 &

12).  In accordance with 28 U.S.C. § 636(c)(1), the parties have consented to have this matter adjudicated by a United States magistrate judge.  (ECF Nos. 7 & 8).  The cross-motions for summary judgment filed by the parties are the subject of this memorandum opinion.

## III.   STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  *Stunkard v. Secretary of*

*Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the

list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes

omitted).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67

S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has

recognized the applicability of this rule in the Social Security disability context. *Fargnoli v.

Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four

corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.  THE DECISION OF THE ALJ

In his decision, the ALJ determined that Castile had not engaged in substantial gainful

activity subsequent to his alleged onset date. (R. at 12). Castile was found to be suffering from

major depression, claustrophobia, a bipolar disorder, a personality disorder, an anxiety disorder,

polysubstance dependence (in remission), and pain in his right arm.  (R. at 12).  Although his right-arm impairment was deemed to be "non-severe," his remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  (R. at 12).  The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing").  (R. at 13-14).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that Castile had the residual functional capacity to engage in a range of "light"[1] work involving only simple, routine, repetitive tasks performed "by himself with no public interaction."  (R. at 14).  Castile had "past relevant work"[2] experience as a carpet layer.  (R. at 19, 76).  Stromberg classified Castile's prior position as a "skilled"[3] position at the "heavy"[4] level of exertion.  (R. at 76).  Since Castile was found to be limited to a range of "unskilled"[5] work at the light level of exertion, it was determined that he could not return to his past relevant work.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity."  20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced.  Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work.  Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity."  20 C.F.R. §§ 404.1568(c), 416.968(c).

[4] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. §§ 404.1567(d), 416.967(d).

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."  20 C.F.R. §§ 404.1568(a), 416.968(a).

Castile was born on December 2, 1977, making him twenty-seven years old on his alleged onset date and thirty-two years old on the date of the ALJ's decision. (R. at 19, 167, 170). He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). He had the equivalent of a high school education[6] and an ability to communicate in English. (R. at 202, 301); 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Castile could work as a hand packer or production worker. (R. at 20). Stromberg's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[7] (R. at 76).

## V. DISCUSSION

Before considering the merits of Castile's arguments, the Court must address a preliminary matter raised by the Commissioner. In support of his second request for review, Castile submitted documentary evidence to the Appeals Council that had never been presented to the ALJ. This evidence detailed the results of a psychological evaluation of Castile conducted on April 7, 2010, by Dr. Martin Meyer and Dr. Julie Uran. (R. at 375-383). In their report, Dr. Meyer and Dr. Uran opined, *inter alia*, that Castile was "unable to work because of social anxiety and difficulties interacting with others." (R. at 381). Castile relies on this report in support of his motion for summary judgment. (ECF No. 10 at 5, 14). The Commissioner argues that the report cannot be considered at this stage, since it was not before the ALJ at the time of his decision. (ECF No. 13 at 14-16).

---

[6] The record indicates that Castile dropped out of high school before completing the twelfth grade and obtained a general equivalency diploma ("GED") shortly thereafter. (R. at 301).

[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

The Commissioner's regulations permit a claimant to submit "new and material evidence"[8] to the Appeals Council in connection with a request for review. 20 C.F.R. §§ 404.970(b), 416.1470(b). The regulations direct the Appeals Council to consider such evidence in deciding whether to review the decision denying the claimant's application for benefits. *Id.* Where the Appeals Council denies the request for review, the administrative law judge's decision becomes the "final decision" of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). Only this "final decision" is subject to judicial review. *Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In *Matthews v. Apfel*, 239 F.3d 589, 592-596 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit held that where the Appeals Council is presented with additional evidence but nevertheless denies a claimant's request for review, a federal court cannot consider that evidence in determining whether the Commissioner's "final decision" (*i.e.*, the decision rendered by the administrative law judge) is "supported by substantial evidence."[9] The Court of

---

[8] Evidence is "new" if it was not available at the time of the administrative law judge's decision, and if it is not merely cumulative of preexisting evidence. *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is "material" if (1) it relates "to the time period for which benefits were denied" and (2) there is a reasonable probability that it would have resulted in an award of benefits had it been considered. *Kelley v. Commissioner of Social Security*, 566 F.3d 347, 351, n. 11 (3d Cir. 2009); *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003); *Szubak*, 745 F.2d at 833.

[9] This issue has divided the federal Courts of Appeals. Compare *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262-1267 (11th Cir. 2007), *Higginbotham v. Barnhart*, 405 F.3d 332, 336-337 (5th Cir. 2005), *Perez v. Chater*, 77 F.3d 41, 45 (2nd Cir. 1996), *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994), *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993), *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992), and *Wilkins v. Secretary of DHHS*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc), (holding that evidence not submitted to the administrative law judge but subsequently submitted to the Appeals Council, which later denies review, should be considered by the District Court), with *Matthews v. Apfel*, 239 F.3d 589, 593-594 (3rd Cir. 2001), *Cotton v. Sullivan*, 2 F.3d 692, 695-696 (6th Cir. 1993), and *Eads v. Secretary of DHHS*, 983 F.2d 815, 817-818 (7th Cir. 1993), (holding that evidence not presented to the administrative law judge but subsequently submitted to the Appeals Council, which later denies review, should not be considered by the District Court unless the claimant shows "good cause" for not having submitted the evidence to the administrative law judge). See also *Mills v. Apfel*, 244 F.3d 1, 4-6 (1st Cir. 2001), (holding that an administrative law judge cannot be faulted for failing to consider unavailable evidence, but that the Appeals Council's denial of a request for review may be judicially reviewable where the Appeals Council relies on an "egregiously mistaken ground" for its action). This Court's reasoning is consistent with the decision of the United States Court of Appeals for the Third Circuit in *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001).

Appeals further declared that no statutory provision authorizes a federal court to review a decision by the Appeals Council denying a claimant's request for review.[10]  *Matthews*, 239 F.3d at 594.

The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  In *Matthews*, the Court of Appeals explained that the "new and material" evidence presented to the Appeals Council is "transmitted with the record" of the underlying administrative proceedings for the sole purpose of enabling a federal court to determine whether a sentence-six remand is warranted.  *Matthews*, 239 F.3d at 594.  A sentence-six remand is proper only where, *inter alia*, the claimant can show that he or she had "good cause" for not procuring and submitting the relevant evidence at a time when it could have been considered.  *Id.* at 593-595.  Since Castile makes no attempt to explain why he could not have been evaluated by Dr. Meyer and Dr. Uran prior to the issuance of the ALJ's decision, he is not entitled to a sentence-six remand.  (ECF No. 10).  Given the limited nature of the Court's jurisdiction, the report prepared by Dr. Meyer and Dr. Uran cannot be considered for any other purpose.  *Matthews*, 239 F.3d at 592-594.  Accordingly, the Court will consider only the evidence that was before the ALJ in determining whether "substantial evidence" supports his decision.

The first argument raised by Castile concerns the ALJ's determination at the third step of the sequential evaluation process.  (ECF No. 10 at 6-10).  The ALJ concluded that Castile's

---

[10] Where the Appeals Council grants a claimant's request for review and issues its own decision denying his or her application for benefits, that decision becomes the "final decision" of the Commissioner and is subject to judicial review.  *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001); *Eads v. Secretary of the DHHS*, 983 F.2d 815, 817 (7th Cir. 1993).

impairments did not meet or medically equal a Listed Impairment. (R. at 13-14). Castile contends that he is *per se* disabled under Listings 12.04, 12.06 and 12.08, and that the ALJ erred in finding to the contrary. (*Id.* at 6).

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Castile's argument pertains to the "B" criteria of Listings 12.04, 12.06 and 12.08.[11] (ECF No. 10 at 6-10). The ALJ determined that Castile's impairments caused a "moderate" degree of limitation in his activities of daily living, social functioning and maintenance of concentration, persistence or pace. (R. at 13). The ALJ further concluded that Castile had experienced no extended episodes of decompensation. (R. at 13-14). Castile asserts that the record is devoid of evidentiary support for the ALJ's findings. (ECF No. 10 at 6-10).

---

[11] In order to be *per se* disabling under the "B" criteria, a claimant's impairment (or combination of impairments) must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; and/or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.04, 12.06 & 12.08.

Dr. Richard A. Heil, a nonexamining medical consultant, opined on August 24, 2006, that Castile's activities of daily living, social functioning and maintenance of concentration, persistence or pace were only "moderately" limited by his mental impairments. (R. at 276). Dr. Heil also indicated that Castile had not experienced an extended episode of decompensation during the relevant period of time. (R. at 276). In determining that Castile was not disabled, the ALJ found Dr. Heil's consultative report to be "consistent with the totality of the record." (R. at 19).

Dr. Ronald Refice, a counseling psychologist, and John Topalanchik ("Topalanchik"), a counselor, asserted on September 21, 2006, that Castile was *per se* disabled under Listings 12.04, 12.06 and 12.08. (R. at 308-310). Dr. Tariq Qureshi, Castile's treating psychiatrist at Stairways Behavioral Health ("Stairways"), completed assessment forms on June 4, 2008, and October 15, 2009, indicating that Castile was "markedly" limited in his social functioning and maintenance of concentration, persistence or pace. (R. at 297, 363). Castile contends that the ALJ erred in rejecting the opinions of these treating sources and crediting Dr. Heil's consultative assessment. (ECF No. 10 at 6-10).

Where a specific functional limitation is involved, it is ordinarily inappropriate for an administrative law judge to credit the opinion of a nonexamining medical consultant over the opinion of a physician who has actually treated or examined the claimant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Nonetheless, the calculus is different with respect to questions involving the issue of *per se* disability. The Commissioner correctly points out that a determination at the third step of the sequential evaluation process generally turns on the presence or absence of specific clinical findings. (Doc. No. 13 at 16);

*Brown v. Bowen*, 845 F.2d 1211, 1214-1215 (3d Cir. 1988). Such findings can sometimes be ascertained from a claimant's medical records.

The question of whether a claimant's impairment (or combination of impairments) meets or equals a Listed Impairment is specifically reserved for the Commissioner's determination. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). An opinion provided by a treating physician declaring his or her patient to be *per se* disabled under a Listing does not qualify as a "medical opinion" under the Commissioner's regulations. 20 C.F.R. §§ 404.1527(e), 416.927(e). For this reason, no "special significance" is accorded to the *source* of an opinion relating to that issue. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3); *Valder v. Barnhart*, 410 F.Supp.2d 134, 140 (W.D.N.Y. 2006)(remarking that "treating source opinions on issues reserved for determination by the Commissioner are not entitled to any significant weight").

The "B" criteria of Listings 12.04, 12.06 and 12.08 relate to "four broad functional areas." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). They do not pertain to the more detailed residual functional capacity assessment that is employed at the fourth and fifth steps of the sequential evaluation process. 61 Fed. Reg. 34474, 34477 (1996). The statement supplied by Dr. Refice and Topolanchik amounted to nothing more than a conclusory opinion concerning an issue that is specifically reserved for the Commissioner's determination. (R. at 308-310); 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). The opinions regarding the issue of *per se* disability submitted by Dr. Qureshi constituted nothing more than unsupported responses to "cursory checklist[s]." (R. at 297, 363); *Randolph v. Barnhart*, 386 F.3d 835, 841 (8th Cir. 2004). Under these circumstances, the ALJ acted within his discretion in choosing to credit Dr. Heil's findings concerning the "B" criteria. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Castile's remaining arguments all relate, in one form or another, to the ALJ's residual functional capacity finding and corresponding hypothetical question to Stromberg. (ECF No. 10 at 11-17). In his first decision, the ALJ concluded that Castile was capable of returning to his past relevant work as a carpet layer. (R. at 110). The Appeals Council found this determination to be unsupported by the evidentiary record and remanded the case to the ALJ for further consideration. (R. at 112). The ALJ was instructed, *inter alia*, to "obtain evidence from a vocational expert to clarify the effect of the assessed limitations on [Castile's] occupational base." (R. at 113). At the second hearing, Stromberg testified that a typical carpet layer job was a skilled position at the heavy level of exertion. (R. at 76). Since Castile was found to be limited to unskilled work at the light level of exertion, it was determined that he could not return to his past relevant work. (R. at 19). In response to a hypothetical question mirroring the ALJ's ultimate residual functional capacity assessment, Stromberg stated that an individual with the limitations incorporated within the question could work as a hand packer or production worker. (R. at 76). The ALJ relied on Stromberg's testimony to reject Castile's claims for DIB and SSI benefits at the fifth step of the sequential evaluation process. (R. at 20-21).

The ALJ generally adopted Dr. Heil's consultative assessment in determining that Castile was capable of engaging in substantial gainful activity. (R. at 19). Castile argues that the ALJ's reliance on Dr. Heil's findings constituted a violation of the Appeals Council's remand order. (ECF No. 10 at 11-14). The Appeals Council's order remanding the case to the ALJ contained some language requiring the ALJ to supplement the existing record with information supplied by Castile's treating sources. (R. at 113-114). The order did not, however, purport to foreshadow a particular *result* in this case. The Court cannot conclude that the ALJ failed to comply with the remand order simply because he made a determination that was not favorable to Castile.

The more complicated question is whether the ALJ's residual functional capacity finding is "supported by substantial evidence." 42 U.S.C. § 405(g). The ALJ determined that Castile could only work "by himself with no public interaction." (R. at 14). This finding was based on documentary and testimonial evidence suggesting that Castile's mental impairments significantly interfered with his ability to interact appropriately with others.

Dr. Glenn W. Thompson, who performed a consultative psychological evaluation of Castile on June 21, 2006, reported that Castile had an "extreme" degree of limitation in his ability to interact appropriately with coworkers and a "marked" degree of limitation in his ability to interact appropriately with supervisors and members of the general public. (R. at 259). Dr. Michael Mercatoris, a second consultative examiner, opined on January 9, 2009, that Castile's ability to interact appropriately with supervisors, coworkers and members of the general public was "markedly" limited. (R. at 298). At the first hearing, Castile testified that he had been able to retain his job as a carpet layer only because his boss, a close friend, had been willing to let him do his work with minimal supervision. (R. at 85). Castile apparently lost that job because his boss (and friend) committed suicide. (R. at 254). At the second hearing, Castile testified that he typically went shopping at night, when nobody else could be found in the local stores. (R. at 61). He stated that would he endure "anxiety attacks" and "start crying" whenever he was forced to interact with others. (R. at 61-62). Hornbeck testified that interactions with members of the general public would cause Castile to "start sweating" and experience "chest pains." (R. at 71). She described an anxiety attack that Castile had suffered during the course of a birthday party attended by only thirteen people, all of whom had been familiar to him. (R. at 71).

Stromberg testified that an individual working as a hand packer or production worker in the national economy would generally be expected to interact with supervisors and respond

appropriately to criticism. (R. at 77). Two consultative examiners concluded that Castile was "markedly" limited in his ability to interact appropriately with supervisors. (R. at 259, 298). The ALJ accorded "little weight" to the opinions of Dr. Thompson and Dr. Mercatoris, claiming that they had been based primarily on Castile's subjective complaints. (R. at 17-18). Nevertheless, *every* medical examination involving a conscious patient "necessarily involves a subjective element." *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988).

An administrative law judge "does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." *Ryan v. Commissioner of Social Security*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Although the ALJ relied on Dr. Heil's opinion in determining that Castile's ability to interact with supervisors was not limited, the Commissioner's regulations clearly provide that more weight should be given to the opinion of a medical source who has examined the claimant than to the opinion of a nonexamining medical consultant. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *McPherson v. Astrue*, 605 F.Supp.2d 744, 772 (S.D.W.Va. 2008). Castile testified that he had been discharged by several employers for arguing with coworkers and supervisors. (R. at 59-60). In light of the overwhelming documentary and testimonial evidence suggesting that Castile's mental impairments limited his ability to interact appropriately with supervisors, Dr. Heil's opinion did not provide "substantial evidence" for the ALJ's contrary conclusion. *Sheehan v. Metropolitan Life Insurance Co.*, 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005)(explaining that courts frequently "discount the opinions of psychiatrists who have never seen the patient," since a psychiatrist "typically treats his patient's subjective

symptoms" and cannot normally "formulate medical opinions based upon objective findings derived from objective clinical tests").

Dr. Qureshi's findings provide no support for the ALJ's determination. On two separate occasions, Dr. Qureshi predicted that Castile's impairments would require him to miss work "more than four days per month" if he were to secure a full-time job. (R. at 297, 363). When questioned by Castile's counsel, Stromberg testified that an individual working in the national economy as a hand packer or production worker would typically be permitted to miss only one day per month. (R. at 76). The ALJ's conclusion that Castile could perform the duties of a full-time job was not supported by a single treating or examining source.

The ALJ appeared to downplay the severity of Castile's impairments by pointing out that he had "never received inpatient psychiatric treatment." (R. at 17). The record indicates that Castile went to the Meadville Medical Center on June 18, 2004, after intentionally consuming twelve to fourteen pills of Tramadol. (R. at 245-248). He apparently tried to commit suicide because his aunt had died two days earlier. (R. at 246). He was allowed to return home after a psychiatrist determined that he was not dangerous. (R. at 245). At the second hearing, Castile testified that he had slit his wrists in August 2009, but that he had not sought treatment at a hospital because he had feared the prospect of inpatient treatment. (R. at 60-61). Hornbeck later corroborated Castile's description of the incident. (R. at 70). Dr. Omar Eslao, a physician affiliated with Stairways, stated on October 23, 2009, that the wrist-slitting incident had been "of low lethality," and that Castile had not really attempted "to kill himself." (R. at 364). The ALJ made specific reference to Dr. Eslao's treatment note in his opinion. (R. at 17).

A claimant's need for frequent inpatient treatment *vel non* is certainly a factor relevant to the disability inquiry. *Kangas*, 823 F.2d at 777-778. It does not follow, however, that a

claimant's ability to avoid inpatient treatment is indicative of an ability to engage in substantial gainful activity.  Under Pennsylvania law, an individual may be involuntarily hospitalized only "when, as a result of mental illness, his [or her] capacity to exercise self-control, judgment and discretion in the conduct of his [or her] own affairs is so lessened that he [or she] poses a clear and present danger of harm to others or to himself [or herself]."  50 PA. STAT. § 7301(a).  The statutory "clear and present danger" standard generally limits involuntary confinement to those who have engaged in some form of harmful or destructive conduct within the thirty days immediately preceding the proposed inpatient treatment.  50 PA. STAT. § 7301(b).  A mentally ill individual who does not meet the criteria for involuntary commitment is eligible for inpatient treatment only on a voluntary basis.  50 PA. STAT. § 7201.  The fact that Castile was never hospitalized because of his mental condition suggests only that he was never in extreme danger of imminent harm, and that he decided against voluntary inpatient treatment.  A claimant's ability to stay out of the hospital, while relevant to the overall inquiry, simply cannot be equated with a capacity to perform the duties of a full-time job.  *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981)("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.").

Given the lack of evidentiary support for the ALJ's residual functional capacity assessment, the Commissioner's "final decision" cannot be affirmed.  It remains to be determined whether a judicially-ordered award of benefits is the proper remedy, or whether a remand for further administrative proceedings is warranted.  An immediate award of benefits is justified only where a fully-developed record "clearly points in favor of a finding that the claimant is statutorily disabled."  *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010).  The parties do not discuss the propriety of a remand (as opposed to an award of benefits) in their

briefs. (ECF Nos. 10 & 13). This comes as no surprise, since Castile seeks an award of benefits and the Commissioner asks the Court to affirm his decision. (ECF Nos. 9 & 12). The fact that the Appeals Council has already remanded this case for a second hearing weighs in favor of an award of benefits and against another remand. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). Under the present circumstances, however, the record is in need of further development.

Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended Titles II and XVI to provide that "an individual shall not be considered to be disabled" under the Social Security Act if "alcoholism or drug addiction" would be "a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations implementing this statutory mandate. 20 C.F.R. §§ 404.1535, 416.935. Under the applicable regulations, the dispositive question is whether a claimant who is disabled as a result of drug or alcohol use would remain disabled if he or she were to stop using those substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If his or her disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to an award of benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). Conversely, if a claimant's disability would not remain in the absence of continued drug or alcohol abuse, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). A finding of materiality is not justified whenever competent medical sources "cannot project what limitations would remain" if the claimant were to stop using drugs or alcohol. *Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006).

The record contains evidence suggesting that some of Castile's limitations may be attributable to drug or alcohol abuse. Castile served prison sentences in both Pennsylvania and

South Carolina for crimes that were apparently committed while he was under the influence of drugs.[12]  (R. at 253).  He has been arrested for driving under the influence of alcohol on more than one occasion.  (R. at 302).  It is not clear whether Castile would be able to interact appropriately with supervisors if he were to avoid drugs and alcohol.[13]  Dr. Thompson stated that drug and alcohol abuse did not contribute to the limitations identified in his examination report.  (R. at 260).  Nonetheless, Dr. Mercatoris referred to Castile's arrest record in the portion of his examination report discussing Castile's inability to get along with supervisors.[14]  (R. at 306).  On October 23, 2009, Castile told Dr. Eslao that he had used marijuana one day earlier.  (R. at 365).  Dr. Eslao stated in a treatment note that Castile had been "counseled about the effects of substances on his mental health" and "counseled to stop using illicit drugs."  (R. at 365).

The ALJ's residual functional capacity assessment already accommodates Castile's need to avoid interactions with coworkers and members of the general public.  (R. at 14).  The main factual dispute between the parties is whether Castile can interact appropriately with supervisors.  Although the documentary and testimonial evidence contained in the record indicates that Castile's impairments prevent him from interacting with supervisors in an appropriate manner, the extent to which this limitation is attributable to continuing drug or alcohol abuse is uncertain.  Since the ALJ determined that Castile was not disabled to begin with, he never reached the issue of materiality.  (R. at 20-21); *Brueggemann v. Barnhart*, 348 F.3d 689, 694-695 (8th Cir. 2003)(explaining that a finding of disability must precede a determination as to materiality).  For

---

[12] Castile evidently spent three years in a South Carolina prison for armed robbery and three months in a Pennsylvania prison for burglary.  (R. at 302).  According to Dr. Thompson, Castile committed these crimes at a time when he was actively abusing illicit substances.  (R. at 253).

[13] At the first hearing, Castile testified that he had "quit" several jobs after arguing with supervisors.  (R. at 86).

[14] Dr. Mercatoris also stated that Castile "should be able to adapt to changes in simple job or work-like situation[s]." (R. at 307).

this reason, the appropriate remedy in this case is a remand for further proceedings rather than an immediate award of benefits.

## VI. CONCLUSION

The record overwhelmingly supports Castile's assertion that his impairments limit his ability to interact with supervisors. (R. at 259, 298, 306, 309). Stromberg testified that an individual working as a hand packer or production worker in the national economy would be required to accept instructions from supervisors and respond appropriately to criticism. (R. at 77-78). Consequently, the decision of the Commissioner is not "supported by substantial evidence" within the meaning of § 405(g). Since the documentary evidence suggests that Castile uses drugs and alcohol, further proceedings are necessary to evaluate "the effects of substances on his mental health." (R. at 365).

During the course of the upcoming administrative proceedings, the Commissioner must afford Castile "an opportunity to be heard." *Thomas v. Commissioner of Social Security*, 625 F.3d 798, 801 (3d Cir. 2010). The forthcoming proceedings will also provide the Commissioner with a chance to consider the report prepared by Dr. Meyer and Dr. Uran. (R. at 377-383); *Reefer v. Barnhart*, 326 F.3d 376, 381, n. 3 (3d Cir. 2003). Since the evidentiary record will be supplemented, the Commissioner may need to reconsider his finding with respect to the issue of *per se* disability under Listings 12.04, 12.06 and 12.08.

Accordingly, the Court will deny the Commissioner's motion for summary judgment (*ECF No. 12*), deny Castile's motion for summary judgment (*ECF No. 9*) to the extent that it requests an immediate award of benefits, and grant Castile's motion for summary judgment to the extent that it seeks a vacation of the Commissioner's final decision, and a remand for further proceedings. The decision of the Commissioner will be vacated, and the case will be remanded

to him for additional administrative proceedings consistent with this opinion.  An appropriate

order follows.

BY THE COURT:


/s/ Maureen P. Kelly
United States Magistrate Judge

cc:     All counsel of record